UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

ALEX DEVAUGHN,

                         Petitioner,

        -against-

HAROLD D. GRAHAM,

                        Respondent.
----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-2322 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Petitioner Alex DeVaughn brings this pro se Amended Petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Am. Pet. (Dkt. 7) at 1.) Petitioner challenges his convictions for two counts of second-degree murder and two counts of first-degree robbery in the Supreme Court of New York, County of Queens. (Id.) For the reasons set forth below, the Amended Petition is DENIED.

## I.    BACKGROUND

### A.    Trial Court Proceedings

    At trial, the prosecution charged that on January 9, 2000, Petitioner and an accomplice, Wydell Simpkins, noticed two men, Roy Douglas and Wayne Wright, outside a store in Queens, New York, wearing "expensive chains," and approached them with guns drawn. People v. DeVaughn, 925 N.Y.S.2d 114, 115 (App. Div. 2011). The prosecution elicited testimony that during the incident, a gunshot went off and Petitioner proceeded to grab a chain from Wright and

ran away. Id. Simpkins later admitted to shooting Douglas, who subsequently died from the gunshot wounds. See id. (See also Trial Tr. (Dkt. 16-5 at ECF No. 204) 1449:20-1460:5.)[1]

The jury also heard testimony from two men, Jamel Pinkney and Jahmier Everett, with whom Petitioner allegedly committed a series of similar robberies in the month prior to the January 9, 2000, charged offense. See id. (See also Aff. of Ranjana C. Piplani in Opp'n to Pet. for Writ of Habeas Corpus ("Resp't's Opp'n.") (Dkt. 13) ¶ 5.) Pinkney and Everett testified that Petitioner described the January 9, 2000, incident to them in detail, and that Petitioner complained that they were unavailable to assist. DeVaughn, 925 N.Y.S.2d at 115-16. The trial court initially ruled that evidence of the uncharged crimes, i.e., robberies Petitioner allegedly committed with Pinkney and Everett, could be admitted to explain why Petitioner would disclose details of the charged offenses to them, but only those uncharged crimes that pre-dated the charged offenses. (Trial Tr. 41:13-42:14.) However, Petitioner's counsel opened the door for the prosecution to adduce evidence regarding uncharged crimes that post-dated the charged offenses by discussing the same in his opening statement. (Id. 1110:5-20.) Pinkney was therefore permitted to testify that after the commission of the charged crimes, he, Petitioner, and Everett attempted to rob an individual wearing a chain at a convenience store around January 11, 2000. (Id. 1286:10-1289:10.) During the attempted robbery, both Pinkney and Everett were shot and taken to a hospital. (Id. 1288:10-16.) While in the hospital, they entered into cooperation agreements with the Queens County District Attorney. (See id. 1369:6-17.)

In his defense, Petitioner sought to introduce evidence of third party culpability, but the request was denied by the trial court. (Id. 1192:1-9.) His counsel argued that a detective's initial

---

[1] The state court trial transcripts are docketed together under multiple subparts of document number 16. For ease of reference, the first citation to the relevant transcripts will include the ECF page number corresponding to the initial page of the transcript. Pin citations thereafter reference the pagination of the transcript itself.

investigation report provided a good faith basis to believe that there may not have been a robbery

at all, and that the killing was retribution by other drug-dealers against the victim.

(Id. 1183:6-23.) Petitioner wanted to question the surviving robbery victim, Wayne Wright, who

testified for the prosecution, as to whether there may have been a potential drug-related motive

for the killing. (Id. 1180:20-1181:3.)

The jury also heard testimony from the getaway driver of the January 9, 2000, incident,

Patrick Brunache, who the trial court concluded was an accomplice as a matter of law.

(Id. 1836:20-23.) Brunache also entered into a cooperation agreement with the District Attorney

before trial. (Id. 1456:22-25.)

At the conclusion of the parties' cases, the court instructed the jury on the elements of the

charged crimes. Of relevance in this petition, the trial court stated:

> Under our law, a person is guilty of Murder in the Second Degree,
> when, in the course of or in furtherance of the commission or
> attempted commission of a robbery, or in the immediate flight
> therefrom that, a person or another participant, if there be any,
> causes the death of a person other than one of the participants.

(Id. 1846:9-15 (emphasis added).) The statute, however, uses the conjunctive "and" rather than

the disjunctive "or." N.Y. Penal Law § 125.25(3) (stating "in the course of and in furtherance

of" (emphasis added)). Petitioner's counsel did not object to this mistake in the jury instructions.

On July 22, 2004, the jury found Petitioner guilty of two counts of murder in the second

degree on felony murder theory, and two counts of robbery in the first degree. See

DeVaughn, 925 N.Y.S.2d at 115. The court sentenced Petitioner, a second violent felony

offender, to two 25-to-life terms of imprisonment to run concurrently for the two murder

convictions, and to two determinate terms of twelve years' imprisonment to run concurrently for

the two robbery convictions. (Sentencing Hr'g Tr. ("Sentencing Tr.") (Dkt. 16-7 at ECF

3

No. 2957) 27:2-28:16.) The robbery sentences were to run consecutively to the murder

sentences. (Id.)

**B.    Direct Appeal**

Petitioner appealed his convictions to the Appellate Division, Second Department.

Petitioner obtained new counsel for his appeal, and his appellate counsel argued three grounds

for reversal, namely that: (1) the trial court erred in admitting evidence of uncharged crimes; (2)

Petitioner was denied his Sixth Amendment right to confront the witnesses against him and to

present a defense when the trial court denied him the opportunity to put forth credible evidence

of an alternate, drug-related motive for the killing of Douglas; and (3) Petitioner was denied due

process when the trial court used the disjunctive "or" rather than the conjunctive "and" in its

charge on felony murder to the jury, thus eliminating an essential element of the crime. (See

Appellant's Br. (Dkt. 15-1 at ECF No. 659) at 1.)[2]

On September, 9, 2010, the State of New York responded, arguing that: (1) the trial court

did not abuse its discretion in admitting evidence of the uncharged robberies and, in any event,

any error was harmless due to overwhelming evidence of guilt; (2) Petitioner's Sixth

Amendment claim lacked merit and, regardless, was unpreserved; and (3) Petitioner's claim

relating to the jury charge lacked merit and was also otherwise unpreserved. (See Resp't's Br.

(Dkts. 15-1, 15-2 at ECF No. 730) at 21-64.)

On May 31, 2011, the Appellate Division affirmed the judgment of the trial court. See

DeVaughn, 925 N.Y.S.2d at 115. On April 4, 2012, the New York Court of Appeals denied

---

[2] The state court materials are docketed together under docket number 15. All relevant materials, e.g., briefs, orders, affidavits, were merged together rather than filed as separate documents. As with the trial transcripts, the court will note the ECF page number corresponding to the first page of a particular document in the initial citation. Pin citations of these state court materials will follow the pagination of individual documents.

Petitioner's application for leave to appeal. See People v. DeVaughn, 968 N.E.2d 1004, 1004 (N.Y. 2012).

### C.    Collateral State Court Proceedings

On January 12, 2013, Petitioner filed a pro se motion in the Supreme Court of New York pursuant to New York Criminal Procedure Law § 440.20, arguing that his sentences should be vacated because the trial court illegally imposed the murder and robbery sentences to run consecutively. (See Aff. of Alex DeVaughn in Supp. of Mot. to Set Aside Sentence (Dkt. 15-2 at ECF No. 810) ¶ 1.) The State opposed the motion. (See Resp't's Opp'n ¶ 15.) On May 21, 2013, the court denied Petitioner's motion, finding that the sentences were valid as a matter of law, and that Petitioner failed to make a showing that the consecutive sentences were illegal. (See May 21, 2013, Order (Dkt. 15-3 at ECF No. 883) at 1-2.)

On June 4, 2013, Petitioner applied to the Appellate Division for leave to appeal the May 21, 2013, Order. (See Aff. of Roni C. Piplani in Opp'n to Def.'s Mot. for Leave to Appeal (Dkt. 15-3 at ECF No. 896) at ¶1.) After the State responded (id.), the Appellate Division denied Petitioner's application on January 13, 2014 (see Jan. 13, 2014, Decision & Order (Dkt. 15-3 at ECF No. 916).)

On or around July 9, 2014, Petitioner filed a pro se application for a writ of error coram nobis in the Appellate Division. (See Mot. for Writ of Error Coram Nobis (Dkt.15-3 at ECF No. 932) at 1.) Petitioner asserted that he was denied his right to effective assistance of appellate counsel because his appellate counsel did not argue on appeal that trial counsel was ineffective for: (1) failing to object to the medical examiner's testimony regarding an autopsy performed by another medical examiner; (2) failing to object when the prosecutor vouched for the truthfulness of cooperating witnesses; (3) opening the door to allow Pinkney and Everett to testify as to uncharged crimes; and (4) failing to object to the trial court's refusal to issue the

5

defense's requested jury charge. (See Aff. of Alex DeVaughn in Supp. of Mot. for Writ of Error Coram Nobis ("DeVaughn Coram Nobis Aff.") (Dkt. 15-3 at ECF No. 942) at 3.) On July 17, 2014, Petitioner filed a supplemental application for writ of error coram nobis, asserting three additional grounds for ineffective assistance of appellate counsel. (See Aff. of Alex DeVaughn in Supp. of Suppl. Appl. for Writ of Error Coram Nobis ("DeVaughn Suppl. Coram Nobis Aff.") (Dkt. 15-4 at ECF No. 1017) ¶¶ 7-17.) Petitioner contended that appellate counsel was ineffective because he failed to argue that trial counsel was ineffective for: (1) not adequately preparing for Petitioner's case; (2) not objecting to the jury charge relating to accessorial liability; and (3) not objecting to the trial court's incorrect felony murder jury charge. (Id.) The State filed a response on October 31, 2014. (See Affirm. in Opp'n to Def.'s Pet. for Writ of Error Coram Nobis (Dkt. 15-3 at ECF No. 971) at 1.)

On April 22, 2015, the Appellate Division denied the application, reasoning that Petitioner failed to establish that he was denied effective assistance of appellate counsel. See People v. DeVaughn, 5 N.Y.S.3d 894, 894 (N.Y. App. Div. 2015). Petitioner sought leave to appeal the denial to the New York Court of Appeals. (Resp't's Opp'n ¶ 20.) On August 4, 2015, the Court of Appeals denied Petitioner leave to appeal. See People v. DeVaughn, 38 N.E.3d 837 (N.Y. 2015).

**D. Federal Habeas Petition**

On April 9, 2014, Petitioner filed a petition for a writ of habeas corpus in this court. Petitioner contends that: (1) the trial court erred by admitting evidence of uncharged crimes against him; (2) he was denied his Sixth Amendment right to confront witnesses against him and to present "credible evidence of a drug related motive for the death of the deceased"; (3) the trial court erred in ordering that his murder and robbery sentences run consecutively rather than concurrently; and (4) his appellate counsel was ineffective because he "failed to raise viable and

6

meritorious issues" in the direct appeal. (See Pet. (Dkt. 1).) Petitioner then requested that this court stay his petition to allow him to exhaust his ineffective assistance of appellate counsel claim in state court. (See Apr. 22, 2014, Mem. & Order (Dkt. 4).) The court granted the request. (Id. at 4.)

On September 4, 2015, Petitioner amended his habeas corpus petition after exhausting the ineffective assistance of appellate counsel claims in the state court error coram nobis proceeding. (See Am. Pet.) The first three grounds for relief in the Amended Petition are identical to that in the original Petition. (Id. at 6-10.) Petitioner expanded his general ineffective assistance of appellate counsel into seven separate bases for relief. He argues that appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective for the following reasons: (1) failing to object to the medical examiner's testimony regarding the autopsy that was performed by a different medical examiner; (2) opening the door to questioning and testimony regarding uncharged crimes; (3) failing to object when the prosecutor vouched for the truthfulness of cooperating witnesses; (4) failing to object to the trial court's refusal to issue the defense's requested jury charge; (5) failing to adequately prepare and investigate on Petitioner's behalf; (6) failing to object to the lack of a jury charge stating that evidence must be considered individually as to each defendant; and (7) failing to investigate the law. (Id. at 11-22.) These additional grounds for relief largely correspond to the arguments in Petitioner's state court applications for a writ of error coram nobis. (See DeVaughn Coram Nobis Aff. at 3; DeVaughn Suppl. Coram Nobis Aff. ¶¶ 7-17.) On December 29, 2015, Respondent filed his opposition to the Amended Petition. (See Resp't's Opp'n ¶ 1.) On January 24, 2016, Petitioner replied. (Pet'r's Resp. to Resp't's Opp'n ("Pet'r's Reply") (Dkt. 18).)

## II.   HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996).

### A.   Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," i.e., the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y. Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a

petitioner did not cite any federal constitutional provisions, he may have fairly presented his

federal claim in the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, every claim that a petitioner makes in his § 2254 petition must have been raised

first in state court to satisfy the exhaustion element. This "total exhaustion" rule requires that "a

district court [] dismiss habeas petitions containing both unexhausted and exhausted claims."

Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). However, there is an important exception to the

total exhaustion rule—created by a 1996 amendment to AEDPA—whereby a district court may

deny an entire habeas petition on the merits notwithstanding a petitioner's failure to exhaust

some or all of his claims. See 28 U.S.C. § 2254(b)(2). In other words, a court may deny but not

grant "mixed petitions" on the merits. Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002) ("A

district court [may] deny a petition on the merits even if it contains an unexhausted claim.").

## B.    Procedural Bar

"It is well established that federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law ground that

is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556

U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails to raise his

federal claims in compliance with relevant state procedural rules, the state court's refusal to

adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying

federal review." Id. The state-law ground may be a substantive rule dispositive of the case, or a

procedural rule precluding adjudication of the claim on the merits. See Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977).

"[T]he adequacy of state procedural bars to the assertion of federal questions is . . . not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Cone, 556 U.S. at 465 (quoting Lee v. Kemma, 534 U.S. 362, 375 (2002) (internal quotation marks omitted)). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so, e.g., if the time to file a state court appeal has expired, then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [] resulted in a procedural default of those claims"); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings"). A court's conclusion that a claim is procedurally defaulted rather than unexhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule discussed above—i.e., if a claim has not been presented to the state court but can no longer be brought in state court, a federal court may nonetheless consider the petitioner's remaining claims on the merits so long as those claims have been exhausted. See Turner, 262 F.3d at 122-23.

"Once a claim is found to be procedurally defaulted, a federal court may grant habeas relief on such claim only if the petitioner has demonstrate[d] cause for the default and prejudice from the asserted error,' or a 'fundamental miscarriage of justice.'" Allison, 2011 WL 3298876, at *6 (quoting House v. Bell, 547 U.S. 518, 536 (2006), Murray v. Carrier, 477 U.S. 478, 496 (1986)). "Showing 'cause' usually requires a demonstration of 'some external impediment preventing counsel from constructing or raising the claim.'" Id. (quoting Murray, 477 U.S. at 492). "A miscarriage of justice claim requires a petitioner to make a showing of actual innocence." Id. (citing Schlup v. Delo, 513 U.S. 298, 326-27 (1995)).

### C.    Antiterrorism and Effective Death Penalty Act

Where a state court has reached the merits of a claim asserted in a § 2254 petition, the state court's decision is reviewed under the deferential standard set forth in AEDPA, which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). "Under AEDPA's 'unreasonable application' clause, our review is extremely deferential: '[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Chrysler v. Guiney, 806 F.3d 104, 118 (2d Cir. 2015) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).

Also under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). When conducting its review pursuant to § 2254(d)(1), a federal court is generally "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III.   DISCUSSION

Petitioner challenges his state court convictions and sentencing. He raises five grounds for his petition for writ of habeas corpus: (1) the trial court erred by admitting evidence of uncharged crimes against him; (2) he was denied his Sixth Amendment right to confront

witnesses when the trial court prevented him from cross-examining a witness on the issue of "a drug related motive for the death of the deceased"; (3) he was denied the right to present a complete defense because the trial court barred him from adducing evidence of the drug related motive; (4) the trial court erred in ordering that his murder and robbery sentences run consecutively rather than concurrently; and (5) his appellate counsel was ineffective. (See Am. Pet. at 6-22.) The court addresses each of these grounds in turn and finds that none justify issuance of a writ of habeas corpus.

### A.    Admission of Uncharged Crimes

Petitioner asserts that he was denied due process when the trial court admitted evidence of uncharged crimes, and that such evidence was significantly prejudicial to him. (Id. at 6.) It is unclear on the face of the Amended Petition what prejudice Petitioner claims resulted, but the court construes the pro se Amended Petition liberally and considers this claim in light of the arguments raised in the state court proceedings. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). On direct appeal before the Appellate Division, Petitioner argued that the admission of testimony relating to uncharged crimes deprived him of a fair trial because it constituted impermissible character evidence. (Appellant's Br. at 1, 7.) At trial, prosecution witnesses Pinkney and Everett testified to a series of uncharged robberies that occurred both before and after the charged offenses. (Trial Tr. 1263:7-1290:2, 1538:7-1557:15.) With respect to each uncharged robberies, the witnesses testified that Petitioner drove the car, provided them with guns, identified the chain-wearing targets, pawned the stolen chains, and split the proceeds with all who participated in the crimes. (Id.) Petitioner argued that this evidence allowed for an impermissible propensity inference, i.e., because Petitioner committed a string of similar armed robberies in the past, he was more likely to have committed the charged crimes. (Appellant's Br. at 4.)

### 1. Exhaustion

The court concludes that Petitioner exhausted his remedies in state court relating to the admission of uncharged crimes. (See id. at 15.) The improper admission of evidence of uncharged crimes can rise to a constitutional violation "if the evidence in question is sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Katowski v. Greiner, 212 F. Supp. 2d 78, 86 (E.D.N.Y. 2002) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)); see also Dowling v. United States, 493 U.S. 342, 352 (1990) (finding that due process would be violated if erroneous admission of evidence relating to acquitted conduct was "so extremely unfair that its admission violate[d] fundamental conceptions of justice"); cf. Roldan v. Artuz, 78 F. Supp. 2d 260, 276 (S.D.N.Y. 1999) (finding that a § 2254 habeas claim that evidence of uncharged crimes was improperly admitted under state law must rise to a constitutional violation to justify federal review). While no constitutional provisions were cited in his appellate brief, Petitioner asserted in his direct appeal that the "pervasive and detailed nature of the evidence [caused] substantial harm [and] deprived Devaughn of a fair trial." (Appellant's Br. at 18-20.) Petitioner has thus arguably alleged a pattern of facts that is well within the mainstream of constitutional litigation. See, e g., Torres v. Keane, No. 98-CV-2444, 2000 WL 35573160, at *1 (2d Cir. Oct. 12, 2000) (summary order); Katowski, 212 F. Supp. 2d at 86. Accordingly, the court finds Petitioner's claim exhausted.

### 2. Procedural Bar

Petitioner's claim relating to uncharged crimes is not procedurally barred. The Appellate Division addressed the issue on the merits in the direct appeal and did not invoke any state law procedural barriers to resolve the claim. DeVaughn, 925 N.Y.S.2d at 116 ("[T]he evidence of the prior robberies was admissible to provide the jury with a thorough understanding of the

defendant's relationship with the prosecution witnesses, particularly as to why the defendant would speak freely to those witnesses about having committed the robberies at issue.").

### 3. Review under AEDPA

Because Petitioner exhausted his claim and his claim was adjudicated on the merits, the court will review the state court determination pursuant to the deferential standard set out in AEDPA. The court concludes that the Appellate Division's decision was neither contrary to, nor involved the unreasonable application of, clearly established Supreme Court precedent. Accordingly, Petitioner's claim relating to admission of uncharged crimes fails.

As an initial matter, the Supreme Court has not specifically addressed whether the admission of uncharged crimes evidence constitutes a violation of due process. See Parker v. Woughter, No. 09-CV-3843 (GEL), 2009 WL 1616000, at *2 (S.D.N.Y. June 9, 2009); see also Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."). The Appellate Division thus could not have arrived at a conclusion opposite to that of the Supreme Court. This case also does not present facts materially indistinguishable from those in a case decided by the Supreme Court. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The state court's dismissal of Petitioner's uncharged crimes claim on direct appeal therefore was not contrary to clearly established Supreme Court precedent.

The pertinent question then is whether the Appellate Division's affirmance of Petitioner's conviction, in light of the admission of uncharged crimes testimony, was an unreasonable application of Supreme Court precedent. For an erroneous admission of evidence to rise to the level of a constitutional violation of due process, Petitioner must show that the evidence was "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling, 493

15

U.S. at 352 (quoting <u>United States v. Lovasco</u>, 431 U.S. 783, 790 (1977)). The Supreme Court has construed the "category of infractions that violate 'fundamental fairness' very narrowly." <u>Id.</u> This is especially true where state rules of criminal procedure are implicated, because the Supreme Court is not a "rule-making organ for the promulgation of state rules of criminal procedure." <u>See</u> <u>Spencer v. Texas</u>, 385 U.S. 554, 564 (1967); <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 ("[H]abeas corpus relief does not lie for errors of state law.").

The court cannot conclude that the admission of testimony of uncharged crimes violated Petitioner's right to due process. Similar to federal law, New York law bars evidence of uncharged crimes or prior bad acts if that evidence is offered solely to establish a defendant's predisposition to commit the charged crime. <u>See</u> <u>Feliciano v. Berbary</u>, No. 03-CV-4832 (NRB), 2003 WL 22832638, at *3 (S.D.N.Y. Nov. 25, 2003); <u>see also</u> Fed. R. Evid. 404(b); <u>People v. Molineux</u>, 61 N.E. 286, 293 (N.Y. 1901). Such evidence may be admitted, however, "where it is relevant to an issue other than a defendant's propensity to commit the act or crime." <u>Feliciano</u>, 2003 WL 22832638, at *3. For example, evidence of uncharged crimes is permissible to prove motive, intent, identity, lack of accident, or mistake, or to complete the narrative of the crime. <u>See</u> Fed. R. Evid. 404(b); <u>People v. Ventimiglia</u>, 420 N.E.2d 59, 62 (N.Y. 1981). Specifically, prior bad acts may be used "to provide the jury with a thorough understanding of the defendant's relationship with the prosecution witnesses, particularly why the defendant would speak freely to those witnesses about having committed the [charged crimes]." <u>People v. Vega</u>, 805 N.Y.S.2d, 642, 643 (App. Div. 2005); <u>see also</u> <u>People v. Sime</u>, 687 N.Y.S.2d 78, 79 (App. Div. 1998). Where evidence was admitted under state law for reasons sufficiently consistent with federal rules, no due process claim will lie. <u>Feliciano</u>, 2003 WL 22832638, at *3.

Here, evidence of the uncharged crimes was admitted for a legitimate purpose. Pinkney, Everett, and Petitioner's history of committing similar robberies together was relevant "to explain the nature of their relationship so as to account for [Petitioner]'s sharing of highly incriminating information with the witness[es]." Sime, 687 N.Y.S.2d at 79. Pinkney and Everett testified that several days after the charged crime, Petitioner greeted them as they arrived back in New York from a weekend away. (See Trial Tr. 1279:1-7, 1549:5-15.) He asked them where they had been and indicated that he had to "put some work in himself." (Id. 1279:1-1279:2.) Petitioner complained that they were unavailable to assist. DeVaughn, 925 N.Y.S.2d at 115-16. Petitioner then shared with Pinkney and Everett a detailed account of how the charged crimes were committed, going so far as to take them to the scene of the crimes to describe how the events took place. (Trial Tr. 1279:1-1285:5, 1549:3-1553:1.) Evidence of the uncharged crimes thus was not admitted to show Petitioner's propensity to commit the charged crime. Rather, it was used to provide the jury context within which to assess whether Petitioner's supposed disclosure of highly incriminating information to Pinkney and Everett was credible. Such use is consistent with both New York and federal rules of evidence.

Furthermore, the trial court mitigated any potential unfairness by issuing limiting instructions to the jury. After Pinkney testified as to the uncharged crimes, the trial court explained: "It's not being offered to prove that this defendant was involved in those prior robberies [so] do not consider it for any purpose . . . other than [these] two purposes: [r]elationship and [the] reasons for the conversation, and the bring back to the scene after the crime." (Appellant's Br. at 7.)[3] The court reiterated the instructions after Everett's testimony.

---

[3] Due to an error in the trial transcript in the record, the court is missing pages 1294 and 1295, which contained the limiting instruction relating to Pinkney's testimony. However, in the state court filings, the parties do not dispute the specific language used in this charge and the text was set forth in full in the Petitioner's appellate brief on direct appeal. The court therefore cites this appellate brief for the limiting instruction regarding Pinkney's testimony.

(Trial Tr. 1614:25-1615:9.) Thus, the instructions expressly limited the consideration of the uncharged crimes testimony solely for permissible reasons. Juries are presumed to follow the court's instructions. See United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006); see also Opper v. United States, 348 U.S. 84, 95 (1954) ("Our theory of trial relies upon the ability of a jury to follow instructions."). "Viewing the evidence of alleged uncharged crimes in light of the proper instructions before the jury, the admission of this testimony cannot constitute a due process violation." Urena v. Lape, 373 F. Supp. 2d 449, 456 (S.D.N.Y. 2005).

At best, "fairminded jurists could disagree" as to whether the contested evidence rendered Petitioner's trial so fundamentally unfair that his right to due process was violated. Chrysler, 806 F.3d at 118. Petitioner thus is not entitled to habeas relief on this ground.

**B.     Violation of the Sixth Amendment's Confrontation Clause**

Petitioner also asserts that he was denied his rights under the Confrontation Clause of the Sixth Amendment. (Am. Pet. at 7.) Petitioner argues that the trial court erroneously limited the scope of his cross-examination of Wayne Wright, the surviving robbery victim, when the court prevented Petitioner's counsel from presenting a drug-related theory for the robbery. (Appellant's Br. at 22.) The Confrontation Clause claim is exhausted but procedurally barred. Accordingly, the claim fails.

1.     Exhaustion

Petitioner exhausted his remedies for his Confrontation Clause claim. Petitioner's brief on direct appeal specifically referenced violations of "his rights of confrontation" and the "right to conduct a full and fair cross-examination." (Appellant's Br. at 1.) This is sufficient to alert the state court as to the claim's federal nature. See Daye, 696 F.2d at 192. Moreover, it was clear that the Appellate Division was aware of the federal nature of the claim because the court

18

referred to the Sixth Amendment and cited to Supreme Court precedent relating to the Confrontation Clause. See DeVaughn, 925 N.Y.S.2d at 116-17.

### 2. Procedural Bar

However, the claim is procedurally barred because Petitioner failed to make a contemporaneous objection as required by state law. A federal court cannot review an issue raised in a habeas petition if the state court previously dismissed the claim on an independent state law ground that is adequate to support the judgment. See Cone, 556 U.S. at 465.

#### a. Independent State Law Ground

It is clear that Petitioner's Confrontation Clause claim was denied on an independent state law ground. A state law ground is independent if it "fairly appear[s] to rest primarily on state procedural law." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted). Here, the Appellate Division applied New York's contemporaneous objection rule to find that Petitioner's claim was "unpreserved for appellate review." DeVaughn, 925 N.Y.S.2d at 116. Under New York law, a party claiming an error in the admission of evidence must raise the issue when the evidence is admitted or it is waived. See, e.g., People v. Kello, 746 N.E.2d 166, 167 (N.Y. 2001); People v. Gray, 652 N.E.2d 919, 921 (N.Y. 1995); see also N.Y. Crim. Proc. Law § 470.05(2). Petitioner argued at trial that he should be able to question Wright about the deceased's drug-dealing and the possibility of a drug-related motive for the killing (Appellant's Br. at 22), but never claimed that the court's evidentiary decision denying the request violated his rights under the Confrontation Clause (see Trial Tr. 1181:16-1192:13). The state court's dismissal of Petitioner's Sixth Amendment claim for failing to make a contemporaneous objection thus rests primarily on a state law ground and was independent of the merits of his objection. DeVaughn, 925 N.Y.S.2d at 116 (citing People v. Walker, 70 A.D.3d 870, 871 (N.Y.

19

App. Div. 2010)); see also Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (finding

"petitioner's claim was procedurally defaulted for lack of a contemporaneous objection").[4]

> b.    *Adequacy of Procedural Bar*

Even where the state court dismissed a claim on an independent state law ground, a

habeas court must still assess the adequacy of the procedural bar because it has "an independent

duty to scrutinize the application of state rules that bar [] review of federal claims." Cone, 556

U.S. at 468. A state procedural rule is adequate if it is firmly established and regularly followed.

See Walker v. Martin, 562 U.S. 307, 316 (2011); see also Downs v. Lape, 657 F.3d 97, 102

(2d Cir. 2011). Application of the procedural rule also must be justified by legitimate state

interests. See Downs, 657 F.3d at 101. Here, both criteria are met. The Second Circuit has

found that the contemporaneous objection rule is firmly established and regularly followed in

New York. Id. at 102; see also Whitely v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011). The

contemporaneous objection rule also serves legitimate state interests as it seeks "to ensure that

parties draw the trial court's attention to any potential error while there is still an opportunity to

address it, and to prevent those who fail to do so from sandbagging the opposing party and the

trial court on appeal." Downs, 657 F.3d at 106 (citation and internal quotation marks omitted).

Nevertheless, "there are exceptional cases in which exorbitant application of a generally

sound rule renders the state ground inadequate to stop consideration of a federal question." Lee

v. Kemna, 534 U.S. 362, 376 (2002). To determine if a particular case presents such exceptional

circumstances, a court must consider the following:

> (1) . . . whether perfect compliance with the state rule would have
> changed the trial court's decision; (2) whether state case law
> indicated that compliance with the rule was demanded in the specific

---

[4] It is of no moment that the Appellate Division also found that Petitioner's claim was, "in any event, without merit." DeVaughn, 925 N.Y.S.2d at 116. The state court's holding that the objection was procedurally barred forecloses habeas review of the same claim. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given the 'realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 376). Here, the

court first notes that while determining whether perfect compliance with the contemporaneous

objection rule would have changed the trial court's decision "involves a certain degree of

speculation," a timely objection at least would have put the court on notice of a potential

constitutional error. Id. at 243. Second, New York courts have required compliance with the

contemporaneous objection rule in similar circumstances. See, e.g., People v. Smith, 75

A.D.3d 420, 421 (N.Y. App. Div. 2010), aff'd, 965 N.E.2d 232 (N.Y. 2012). Finally, because

Petitioner neither expressly nor implicitly raised this claim in the trial court, he did not

"substantially comply" with the state procedural rule. As noted previously, compliance serves a

legitimate governmental interest by putting a trial court on notice of the error so that it can be

remedied if necessary. See Downs, 657 F.3d at 106. This is not an exceptional case that justifies

finding inadequate the generally sound contemporaneous objection rule.

        *c.*    *Cause and Prejudice or Miscarriage of Justice*

Petitioner may still obtain review of the procedurally barred claim if he can establish

cause for the procedural default and prejudice from denial of habeas review. See Parks v.

Sheahan, 104 F. Supp. 3d 271, 282 (E.D.N.Y. 2015). Cause for a procedural default typically

requires a showing that some objective element external to the defense impeded counsel's efforts

to comply with a state's procedural rules. See Amadeo v. Zant, 486 U.S. 215, 222 (1988); see

also Murray, 477 U.S. at 488. Alternatively, a federal court may review a procedurally defaulted

claim if the petitioner shows that a fundamental miscarriage of justice will result from non-

review. See Murra, 477 U.S. at 492. A miscarriage of justice generally requires a showing of

actual innocence through new evidence that was not available to the jury, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." See Schlup v. Delo, 513 U.S. 298, 324-25. Where no "information regarding cause for the default or a miscarriage of justice" is presented in a habeas petition, there is no basis to consider a procedurally defaulted claim. Silent v. Perlmann, No. 07-CV-4524 (JFB), 2008 WL 5113418, at *7 (E.D.N.Y. Nov. 25, 2008). Here, Petitioner has neither explained how he was prevented from raising a Confrontation Clause claim in the trial court, nor does he assert his actual innocence. There is thus no basis to consider his defaulted claim, and he is not entitled to habeas relief on this ground.

## C.    Deprivation of Right to Present a Defense

Petitioner also contends that he was deprived of the right to present a defense when the trial court prevented him from eliciting testimony as to a drug-related motive for the shooting. (Am. Pet. at 7.) The court finds that his claim has been exhausted and is not procedurally barred. However, the claim fails on the merits.

### 1.    Exhaustion

Petitioner satisfied the exhaustion requirement for his claim by fairly raising the federal claim in his direct appeal. Petitioner explicitly argued that his right to present a defense was grounded in the U.S. Constitution and cited relevant Supreme Court precedent. (Appellant's Br. at 21-22.)

### 2.    Procedural Bar

Petitioner's right to present a defense claim is not procedurally barred. The Appellate Division addressed the right to present a defense on direct review, and denied Petitioner's appeal on the merits without invoking any procedural barriers. DeVaughn, 925 N.Y.S.2d at 116 ("[T]he [trial court] properly precluded defense counsel from asking the surviving robbery victim if the

shooting could have been perpetrated by a third party in retaliation for a drug-deal-related stabbing robbery . . . since this line of questioning was based only on speculation.").

### 3. Review under AEDPA

The court thus analyzes the Appellate Division's adjudication on the merits pursuant to the deferential standard set out in AEDPA. Because the Appellate Division's decision was neither contrary to, nor involved the unreasonable application of, clearly established Supreme Court precedent, Petitioner's claim relating to his right to present a defense fails.

#### a. *Contrary to Clearly Established Federal Law*

While it is true that the Supreme Court has made clear that "a criminal defendant has a constitutional right—grounded in the Sixth Amendment's Compulsory Process and Confrontation Clauses and the Fourteenth Amendment's Due Process Clause—to 'a meaningful opportunity to present a complete defense,'" Hawkins v. Costello, 460 F.3d 238, 243 (2d Cir. 2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)), this right is not "unlimited; rather it is subject to 'reasonable restrictions,'" Wade v. Mantello, 333 F.3d 51, 58 (2d Cir. 2003) (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)). "Central among these restrictions are state and federal rules of procedure and evidence 'designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" Id. (quoting Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). But, "a state is not free to apply arbitrary rules of competence to prevent a material witness from testifying for the defense, nor may it 'apply a rule of evidence that permits the witness to take the stand, but arbitrarily excludes material portions of his testimony.'" Id. at 57 (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). However, as relevant here, the Supreme Court "has not articulated the specific set of circumstances under which a criminal defendant must be permitted to introduce evidence of potential third-party culpability." Id. at 58. It has only noted that "such evidence must be admitted when, under the

23

'facts and circumstances' of the individual case, its exclusion denied the defendant of a fair trial.'" Id. (quoting Chambers, 410 U.S. at 303). Therefore, it cannot be said that it was contrary to clearly established federal law as defined by the Supreme Court to exclude evidence of third party culpability, i.e., an alternative, drug-related motive for the shooting.

*b.*      *Unreasonable Application of Clearly Established Federal Law*

The question then, is whether the state court decision was an unreasonable application of clearly established federal law. When considering whether exclusion of evidence violated a criminal defendant's right to present a complete defense, a court must first consider "the propriety of the trial court's evidentiary ruling." Hawkins, 460 F.3d 238, 244 (2d Cir. 2006) (quoting Wade, 333 F.3d at 59). If the evidentiary ruling was correct pursuant to a state evidentiary rule, then the applicable inquiry is whether the evidentiary rule is "arbitrary" or "disproportionate to the purposes [it is] designed to serve." Id. (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)).

*i.*      Propriety of the Ruling under State Law

In New York, "[w]here a defendant seeks to pursue a defense of third-party culpability at trial, evidence offered in support of that defense is subject to the 'general balancing analysis that governs the admissibility of all evidence.'" People v. DiPippo, 50 N.E.3d 888, 893 (N.Y. 2016) (quoting People v. Primo, 753 N.E.2d 164, 168 (N.Y. 2001)). However, "'admission of evidence of third-party culpability may not rest on mere suspicion or surmise." Id. (quoting Primo, 743 N.E.2d at 169). This is because the "risks of delay, prejudice, and confusion are particularly acute" where a defendant seeks to present evidence of third party culpability. Id. at 899. In this case, Petitioner's counsel sought to introduce third party culpability evidence by questioning the surviving robbery victim, Wright, on whether there was a potential drug-related motive for the killing. (Trial Tr. 1180:20-1181:3.) Petitioner's counsel argued that a detective's initial

investigation report provided a good faith basis to believe that there may not have been a robbery at all, and that the death was retribution by other drug-dealers against the victim. (Id. 1183:6-23.)

The court finds that the third party culpability evidence was wholly speculative, and thus properly excluded. According to Petitioner's trial counsel, the preliminary investigative report indicated that Wright was a marijuana dealer and Douglas, the deceased was Wright's supervisor in these drug activities. (Trial Tr. 1188:1-13.) The report also provided that just before the robbery and shooting at issue, Douglas and Wright discussed the recent stabbing of a rival drug dealer. (Id.) However, there was no indication that this stabbing was in any way linked to the subsequent shooting, and thus it was pure speculation that there was a drug-related motive for the shooting here. In essence, Petitioner argued that some unidentified third party might have had a motive to shoot the deceased because another drug dealer's stabbing may have resulted from his involvement in the drug trade. Courts have rejected similar attempts to admit such speculative evidence of third party culpability. See, e.g., DiPippo, 50 N.E.3d at 893 ("[S]peculative assertions that other unidentified individuals had a motive to harm a victim are insufficient to support admission of third-party culpability evidence."); People v. Gramble, 899 N.Y.S.2d 207, 208 (App. Div. 2010) ("The court properly exercised its discretion in precluding background information about one of the victims, offered by defendant to show that unknown persons may have had a motive to kill him."). Furthermore, admission of the proffered testimony could have misled or confused the jury, diverting their attention from consideration of Petitioner's guilt or innocence to the deceased's character and alleged involvement in drug dealing, as well as inviting the jury to draw connections between the stabbing and shooting where there is no indication any existed. See Wade, 333 F.3d at 61-62. Therefore, the trial court

properly applied the "general balancing analysis that governs the admissibility of all evidence," Primo, 753 N.E.2d at 168, and the preclusion of testimony relating to the drug-related motive was not erroneous under New York law.

ii.     <u>Arbitrariness of the Evidentiary Rule</u>

Where a trial court properly excluded evidence pursuant to a state evidentiary rule, the question becomes whether the state rule is "arbitrary" or "disproportionate to the purposes [it is] designed to serve." Hawkins, 460 F.3d at 244 (quoting Scheffer, 523 U.S. at 308). Exclusion of evidence is "unconstitutionally arbitrary or disproportionate [only] where it has infringed upon a weighty interest of the accused." Scheffer, 523 U.S. at 308. It should be noted that "the Supreme Court has found the Constitution to be principally (but not always) concerned with state evidentiary rules leading to the 'blanket exclusion' of categories of evidence," rather than ordinary rules of evidence where a court weighs the probative value of the challenged evidence against potential for issues such as jury confusion, undue delay, or prejudice. Wade, 333 F.3d at 60 (quoting Crane, 476 U.S. at 690). In the latter instance, "the Constitution leaves to the judges . . . 'wide latitude' to exclude evidence . . . ." Id. (citation omitted). The trial court excluded the purported evidence of third party culpability pursuant to a state rule that requires a court to balance the probative value against the "risks of delay, prejudice, and confusion." DiPippo, 50 N.E.3d at 899. It is therefore the type of evidentiary rule where the Constitution affords trial judges broad discretion to determine admissibility, and not the kind of blanket exclusion rule that traditionally risks running afoul of the Constitution. In any event, courts have held that the exclusion of speculative third party culpability evidence does not "infringe[] upon a weighty interest of the accused." Collins v. Barto, No. 05-CV-9387 (RWS), 2007 WL 2398778, at *13-14 (S.D.N.Y. Aug. 14, 2007). The state evidentiary rule therefore is not unconstitutionally arbitrary or disproportionate.

26

Because the exclusion of evidence regarding a potential drug-related motive to the deceased's killing was neither contrary to, or an unreasonable application of, clearly established federal law, Petitioner's claim that his right to present a defense was violated fails.

## D.    Consecutive Sentences

Petitioner next asserts that the trial court erred in ordering his sentences for robbery to run consecutively to his sentences for murder. Petitioner characterizes this as an improper enhancement to his sentence in violation of his Eighth and Fourteenth Amendment rights. (Am. Pet. at 9.) The court construes the Amended Petition to challenge his sentence on the grounds that it is cruel and unusual punishment under the Eighth Amendment as applied to the states through the Fourteenth Amendment.[5] See Triestman, 470 F.3d at 474. Although Petitioner's claim is unexhausted and is not procedurally barred, the court nonetheless dismisses the claim because it is without merit.

### 1.    Exhaustion

Petitioner's constitutional claim related to his sentences for robbery running consecutively to his sentences for felony murder are unexhausted because they were not fairly presented as a federal claim to the state court. While Petitioner challenged the legality of his sentences via a motion to vacate under § 440.20 of the New York Criminal Procedure Law, the only legal basis for his motion was based on New York state law, specifically, New York Penal Law § 70.25(2), governing the imposition of consecutive sentences. (Aff. of Alex DeVaughn in Supp. of Mot. to Set Aside Sentence ¶ 4.) By only referring to state law violations and failing to mention any constitutional provisions, Petitioner did not "assert[]. . . [his] claim[s] in terms so

---

[5] Petitioner also claims that his sentence violated the Sixth Amendment, but he provides no explanation for this contention. Even liberally construing the pro se Amended Petition, the court is unable to find a colorable basis for a violation of the Sixth Amendment. This portion of Petitioner's claim is therefore dismissed as meritless.

27

particular as to call to mind a specific right protected by the constitution." Daye, 696 F.2d at 192. A challenge on state statutory grounds also cannot be said to be "substantially equivalent" to Petitioner's current constitutional claims such that the state court was likely alerted to the federal nature of Petitioner's motion. Of note, in his § 440 filings, Petitioner cited only to New York state cases, none of which "employed constitutional analysis in like factual situations." Id. at 194.

2.    Procedural Bar

Petitioner's claim is not procedurally barred. An unexhausted claim may be procedurally barred, and thus deemed exhausted, if it is clear that the state court to which a petitioner must present his claim would now find the claim procedurally defaulted. See Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008); see also Coleman v. Thompson, 501 U.S. 722, 729 (1991). Here, Petitioner could seek an additional § 440.20 proceeding in state court challenging the legality of his sentence under the Constitution and Supreme Court precedent. See Saracina v. Artus, No. 04-CV-521S (WMS), 2007 WL 2859722, at *7 (W.D.N.Y. Sept. 26, 2007). "Section 440.20 permits a movant to bring a collateral attack on the legality of his sentence at any time after conviction unless the issue was previously decided on the merits on direct appeal." Id. (citing Reyes v. Phillips, No. 02-CV-7319 (LBS), 2005 WL 2173812, at *5 (S.D.N.Y. Sept. 6, 2005)). The legality of Petitioner's sentence was not decided on the merits on his direct appeal, thus he can still challenge the sentence in a § 440.20 proceeding. See N.Y. Crim. Proc. Law § 440.20(2).

3.    Merits

Although the court finds that Petitioner's claim is unexhausted and not procedurally barred, it nevertheless denies habeas relief on this basis because the claim is without merit. Ordinarily, "courts may not adjudicate mixed petitions for habeas corpus, that is, petitions

containing both exhausted and unexhausted claims." Rhines v. Weber, 544 U.S. 269, 273 (2005). However, a mixed petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); see also Turner, 262 F.3d at 122. A court therefore may reach the merits of an unexhausted claim if it finds the claim to be meritless in order to deny the petition in its entirety. McCall v. Rivera, 965 F. Supp. 2d 311, 330 (S.D.N.Y. 2013).

Petitioner argues that the imposition of consecutive sentences for his felony murder and robbery charges was cruel and unusual in violation of the Eighth Amendment. "Eighth amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." United States v. Aiello, 864 F.2d 257, 265 (2d Cir. 1988). The reason is that "if the defendant has subjected himself to a severe penalty, it is simply because he has committed a great many such offences." Id. (internal alternation marks omitted) (quoting O'Neil v. Vermont, 144 U.S. 323, 331 (1892)). Only under extraordinary circumstances would the imposition of consecutive sentences constitute cruel and unusual punishment. Herrera v. Artuz, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001). Courts must defer to the state legislative determinations regarding the appropriateness of consecutive sentences, and intervene only "where the punishment is barbaric or vastly disproportionate to the crime committed." Salcedo v. Artuz, 107 F. Supp. 2d 405, 414 (S.D.N.Y. 2000) (citing Solem v. Helm, 463 U.S. 277 (1983), which found a life sentence vastly disproportionate to a crime of passing a bad check for $100)).

As relevant here, New York law grants a sentencing court discretion to decide whether multiple sentences of imprisonment should run consecutively or concurrently. N.Y. Penal Law § 70.25(1). One exception to this general rule is sentences for "two or more offenses committed . . . through an act or omission which itself constituted one of the offenses and also

was a material element of the other"; these sentences must run concurrently. Id. § 70.25(2).

Petitioner and Respondent agree that felony murder and its predicate felony fall within the

purview of § 70.25(2), i.e., Petitioner's sentences for the felony murder conviction based upon

the robbery of Douglas, the deceased, and the robbery of Douglas itself, must run concurrently,

and the sentences for felony murder premised upon the robbery of Wright, the surviving victim,

and the robbery of Wright must run concurrently. (See Resp't's Opp'n at 67-68.) The trial court

nonetheless ran the felony murder and robbery sentences consecutively, but the two felony

murder sentences and the two robbery sentences, respectively, concurrently. (Sentencing

Tr. 27:2-28:16.) Respondent contends that this was permissible because § 70.25(2) only requires

that a sentence for felony murder and its underlying felony be run concurrently, and so the felony

murder predicated on the robbery of Douglas could run consecutively with the robbery of

Wright, and vice versa. (See Resp't's Opp'n at 67-69.) The practical effect, however, is that the

Douglas felony murder and robbery sentences are run consecutively and the Wright felony

murder and robbery sentences are run consecutively, even if the explicit terms of the sentencings

did not require them to run consecutively.

   While, intuitively, this appears to run afoul of § 70.25(2), it is not entirely clear that such

sentences are prohibited under New York law. See, e.g., People v. Riley, 765

N.Y.S.2d 890, 892-93 (App. Div. 2003).[6] Even if they were, Petitioner's challenge to his

consecutive sentences is an argument that the state court misapplied state law, and the proper

---

[6] In Riley, the defendant was sentenced to a 25-to-life term of imprisonment for intentional murder, two 12.5-to-25-year terms for two robberies, and a 25-to-life term for felony murder predicated on the aforementioned robberies. 765 N.Y.S.2d at 892-93. The intentional murder and the two robbery sentences were to run consecutively, and the felony murder sentence was to run concurrent with the intentional murder as well as the two predicate robbery sentences. Id. However, if the two murder sentences were run concurrently, then the felony murder sentence would have to run consecutively to the predicate robbery sentences because the robbery sentences must run consecutively with the intentional murder sentence. Id. The Second Department held that such a sentencing structure was permissible under § 70.25(2). Id.

30

interpretation and application of state law is beyond the scope of habeas review. See Estelle, 502 U.S. at 63 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."). The only question for this court is whether consecutive sentences are so "barbaric or vastly disproportionate to the crime committed" as to constitute an Eighth Amendment violation. Salcedo, 107 F. Supp. 2d at 414. Petitioner was sentenced to a cumulative term of 37 years to life for convictions on two counts of felony murder and two counts of robbery. (Sentencing Tr. 27:2-28:16.) Given the seriousness of the crimes and the fact that even one count of felony murder carried a sentence of 25 years to life, Petitioner's cumulative sentence of 37 years to life is not barbaric or vastly disproportionate.

Because the court finds that Petitioner's consecutive sentences claim fails to raise a cognizable constitutional issue, and because the court denies Petitioner's other grounds for habeas relief (see supra III.A-C, infra III.E), the unexhausted consecutive sentences claim is dismissed on the merits.

**E.      Ineffective Assistance of Appellate Counsel**

Finally, Petitioner claims that he was denied his right to effective assistance of counsel when appellate counsel failed to argue on appeal that trial counsel was ineffective for: (1) failing to object to the medical examiner's testimony regarding an autopsy that was performed by a different medical examiner; (2) opening the door to questioning and testimony regarding uncharged crimes; (3) failing to object when the prosecutor vouched for the truthfulness of a cooperating witness; (4) failing to object to the trial court's refusal to issue a requested jury charge as to accessorial liability; (5) failing to adequately prepare and investigate on Petitioner's behalf; (6) failing to object to the lack of a multiple defendant jury charge; and (7) failing to

investigate the law. (See Am. Pet. at 10-22.)[7] These claims were exhausted at the state level in a writ of error coram nobis proceeding and are not procedurally barred. However, Petitioner has failed to establish that the Appellate Division's rejection of his claims of ineffective assistance of appellate counsel was either contrary to, or an unreasonable application of clearly established Supreme Court precedent. At a minimum, fairminded jurists could disagree as to whether the Appellate Division's rulings were correct, and thus Petitioner has not met the deferential standard of review under AEDPA.

      1.    Exhaustion

Petitioner's ineffective assistance of appellate counsel claims were exhausted. He petitioned the Appellate Division for a writ of coram nobis, arguing that he was "deprived of his constitutional right to the effective assistance of appellate counsel," asserting the same grounds as in his Amended Petition. (Compare DeVaughn Coram Nobis Aff., DeVaughn Suppl. Coram Nobis Aff., with Am. Pet. at 10-22.) It is therefore clear that he "fairly presented [the claims] to the state courts" by "inform[ing them] of both the factual and the legal premises of the claim[s] he asserts." Daye, 696 F.2d at 191. The Appellate Division evidently understood the federal nature of Petitioner's claims because it cited Supreme Court precedent in denying the claims of ineffective assistance of appellate counsel. DeVaughn, 5 N.Y.S.3d at 894 (citing Jones v. Barnes, 463 U.S. 745 (1983)). Petitioner has therefore satisfied the exhaustion requirement.

      2.    Procedural Bar

Petitioner's claims also are not procedurally barred. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural

---

[7] Petitioner does not explain the bases for these claims in his pro se Amended Petition, but the court will assume that they rests on substantially the same grounds as that set forth in his error coram nobis application.

principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011). The Appellate

Division denied the coram nobis petition on the merits and did not indicate any other reason for

the denial. See DeVaughn, 5 N.Y.S.3d at 894. Accordingly, Petitioner's ineffective assistance

claims are not procedurally barred.

### 3. Review under AEDPA

Because the state appellate court adjudicated Petitioner's ineffective assistance claims on

the merits, this court will review that court's denial pursuant to the deferential standard of

AEDPA. For the following reasons, Petitioner's claims of ineffective assistance of appellate

counsel do not warrant habeas relief.

#### a. *Contrary to Clearly Established Federal Law*

As an initial matter, the Appellate Division's denial of Petitioner's request for a writ of

error coram nobis based on his claims of ineffective assistance of appellate counsel was not

contrary to clearly established federal law. While the Supreme Court has recognized that "the

[Sixth Amendment's] right to counsel is the right to the effective assistance of counsel,"

Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397

U.S. 759, 771 n.14 (1970)), an ineffectiveness claim cannot be based on counsel's failure to raise

all nonfrivolous arguments on appeal, Jones v. Barnes, 463 U.S. 745, 754 (1983). In fact,

"appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous

claim, but rather may select from among them in order to maximize the likelihood of success on

appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones, 463 U.S. at 745). Instead, a

defendant must show that "counsel omitted significant and obvious issues while pursuing issues

that were clearly and significantly weaker." Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015).

Although the Appellate Division rejected the error coram nobis petition in a summary

disposition, it did note its reliance on the proper legal standard by citing to Jones and People v.

Stultz, 810 N.E.2d 883 (N.Y. 2004). See DeVaughn, 5 N.Y.S.3d at 894. Stultz is a New York Court of Appeals decision with an extensive constitutional analysis of an ineffective assistance of appellate counsel claim, including the application of Strickland. See generally 810 N.E.2d 883. This analysis, coupled with the fact that this case is factually distinguishable from any previously decided by the Supreme Court, is sufficient to show that the Appellate Division's ruling was not contrary to Supreme Court precedent. Chrysler, 806 F.3d at 117; Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000).

      *b.     Unreasonable Application of Clearly Established Federal Law*

      The court next turns to whether the Appellate Division's denial of the coram nobis petition constituted an unreasonable application of Supreme Court precedent. Specifically, counsel's assistance is ineffective only if a defendant can show "(1) that his counsel's representation 'fell below an objective standard of reasonableness,' and (2) prejudice, in 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Chrysler, 806 F.3d at 117 (quoting Strickland, 466 U.S. at 688, 694)); see also Smith, 528 U.S. at 285 (noting the same test is applied for claims "in the appellate context as well as at trial"). To show that an appellate counsel's representation fell below an objective standard of reasonableness based on his failure to raise colorable claims on appeal, counsel must have omitted "significant and obvious issues" while pursuing "clearly and significantly weaker" ones. Lynch, 789 F.3d at 311. "To establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." Id. "Whereas counsel's performance is evaluated based on the facts of the particular case, viewed as of the time of counsel's conduct, the prejudice determination may be made with the benefit of hindsight." Id. (citations and internal quotation marks omitted).

The court notes that the "highly deferential" standard of review under AEDPA amplifies the already "highly deferential" standard under Strickland, rendering success on an ineffective assistance of counsel claim in a habeas context exceedingly difficult. Harrington, 562 U.S. at 105. Under Strickland, there is "a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [] strategy.'" 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). When effectiveness of counsel is evaluated by a habeas court, the bar is raised even higher because "the question is not whether counsel's actions were reasonable [but] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. "[T]he range of reasonable applications [of Strickland] is substantial." Chrysler, 806 F.3d at 118 (citing Harrington, 563 U.S. at 105). Where, as here, the state court decision is a summary disposition without detailed reasoning, this court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington, 563 U.S. at 102.

The court finds it useful to briefly note the arguments appellate counsel did raise on appeal. Appellate counsel's well-reasoned, twenty-nine page opening brief stressed three points on appeal: (1) trial court erred in admitting evidence of uncharged crimes; (2) Petitioner was denied his Sixth Amendment right to confront witnesses against him and to present a defense when the trial court precluded him from putting forth evidence of a drug-related motive for the death of the deceased; and (3) Petitioner was denied his right to due process when the trial court failed to include an essential element of felony murder in its charge to the jury. (See generally

Appellant's Br.) Appellate counsel also made clear in a letter to Petitioner that it was a strategic choice not to argue that trial counsel was ineffective assistance because such an argument would undermine the more meritorious claims, namely, that the trial court erred despite hearing compelling arguments from trial counsel. (See DeVaughn Suppl. Coram Nobis Aff. ¶ 22).

The court reviews Petitioner's grounds for ineffective assistance of appellate counsel in turn.

i.    Medical Examiner Testimony

Petitioner asserts that appellate counsel should have argued that trial counsel was ineffective for not objecting to the medical examiner's testimony. (See Am. Pet. at 10.) At trial, Dr. Lara Goldfeder, a certified expert witness (Trial Tr. 1669:23-25), testified about the autopsy of the deceased robbery victim and the corresponding autopsy report (id. 1670:3-1685:21). However, the autopsy was performed by Dr. Amy Hart, who, at the time of the trial, had left New York. (Id. 1671:3-6.) The autopsy report, which was also prepared by Dr. Hart and which was received into evidence without objection, indicated that the cause of death was "Homicide (shot by another)." (Autopsy Report (Pet'r's Resp. to Resp't's Opp'n to Writ of Error Coram Nobis (Dkt. 15-3 at ECF No. 995), Ex. E) (Dkt. 15-4 at ECF No. 1036).) Petitioner argues that allowing Dr. Goldfeder to testify as to the autopsy report prepared by Dr. Hart violated his Sixth Amendment right to confront the witnesses against him. (DeVaughn Coram Nobis Aff. at 3.)

Petitioner has not shown that appellate counsel's failure to raise this issue on appeal was unreasonable. While it is true that the Confrontation Clause has been interpreted to bar admission of "testimonial evidence," the Supreme Court has only stated "testimonial evidence" includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations," and has yet to define the full contours of what it means to be "testimonial." Crawford v. Washington, 541 U.S. 36, 68 (2004). Furthermore, under then and

current New York caselaw, admission of autopsy reports prepared by non-testifying medical examiners does not violate the Sixth Amendment. See People v. Freycinet, 892 N.E.2d 843, 846 (N.Y. 2008); People v. Acevedo, 976 N.Y.S.2d 82, 83 (App. Div. 2013). In assessing whether a scientific report is testimonial in nature and thus implicates the Confrontation Clause, the New York Court of Appeals has considered whether the report: (1) was prepared by an arm of the law enforcement; (2) contains a "contemporaneous record of objective facts"; (3) likely contains a pro-law enforcement bias; and (4) "explicitly link[s]" the defendant to the crime. Freycinet, 892 N.E.2d at 845-46. A medical examiner is not part of an arm of law enforcement, see id., and Dr. Hart's report contains a mostly contemporaneous, objective account of observable facts, does not contain a pro-law enforcement bias, and makes no reference to Petitioner. See id. Although the report in Freycinet was redacted for the medical examiner's opinion and Dr. Hart's report contained an opinion as to the cause of death, the "significance of the report to this case [similarly] derives almost entirely from Dr. [Hart]'s precise recording of [her] observations and measurements as they occurred." Id. at 846. Given the state of the law and mindful of the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, see Strickland, 466 U.S. at 689, the court cannot conclude that trial counsel's decision not to object to Dr. Goldfeder's testimony about Dr. Hart's report was unreasonable, much less that it was unreasonable for appellate counsel not to advance such an argument. For similar reasons, Petitioner fails to show that appellate counsel's conduct prejudiced him, i.e., "there is a reasonable probability that [the claim] would have succeeded." Lynch, 789 F.3d at 311. Accordingly, the Appellate Division correctly denied Petitioner's claim.

ii. Opening the Door to Uncharged Crimes Post-Dating the
Charged Offense

Petitioner also asserts that his appellate counsel should have argued that trial counsel was

ineffective for opening the door to testimony regarding uncharged crimes. (DeVaughn Coram

Nobis Aff. at 3.) Before trial, the court ruled that the prosecution could introduce evidence of

uncharged robberies allegedly committed by Petitioner and two cooperating witnesses, but only

those that pre-dated the charged offenses and not after. (Trial Tr. 42:3-15.) Petitioner's trial

attorney brought up the post-dated robberies in his opening statement (id. 1104:25-1105:20), thus

opening the door for the prosecution to introduce evidence relating to the same (see

id. 1109:23-1110:4.) Petitioner's trial counsel indicated that his cross-examination strategy

necessitated opening the door in this fashion. (Id. 1110:18-20 ("I anticipate fully that the door

will be opened, so I have no problem with the witnesses testifying about that.").)

Appellate counsel's choice not to argue trial counsel was ineffective on this ground was

reasonable. "[T]he decision of appellate counsel to choose among plausible options of appellate

issues is preeminently a strategic choice and is 'virtually unchallengeable.'" Richburg v.

Hood, 794 F. Supp. 75, 78-79 (E.D.N.Y. 1992) (quoting Strickland, 466 U.S. at 690); Jones, 463

U.S. at 751-52 ("Experienced advocates since time beyond memory have emphasized the

importance of winnowing out weaker arguments on appeal and focusing . . . at most on a few key

issues."). Appellate counsel here made the strategic choice to argue on appeal that the trial court

erred in admitting evidence of uncharged crimes pre-dating the charged offenses. (Appellant's

Br. at 1.) He declined to raise an ineffective assistance of trial counsel claim because it would

"hurt some of our appellate arguments, e.g., . . . we are claiming that your trial attorney raised a

compelling argument to exclude the uncharged crime evidence." (DeVaughn Suppl. Coram

Nobis Aff. ¶ 22.) Furthermore, trial counsel opened the door only after the trial court denied his

application to exclude evidence of all uncharged crimes. Because the jury would already hear about the uncharged crimes pre-dating the charged offense, trial counsel used the post-dated robberies to impeach the prosecution witnesses' credibility by establishing their reasons for cooperating with the prosecution and their original misstatements to the police. (Id. 1315:9-1323:13, 1569:9-1577:8.) Trial counsel's decision was not unreasonable, and was in fact sound litigation strategy. Accordingly, appellate counsel's failure to argue such a decision was unreasonable—and instead focusing on other arguments—also was not unreasonable. Petitioner was not prejudiced for similar reasons.

          iii.     <u>Vouching for the Truthfulness of Cooperating Witnesses</u>

Petitioner next claims that his appellate counsel should have argued on appeal that trial counsel was ineffective for failing to object when the prosecutor vouched for the truthfulness of cooperating witness testimonies. (Am. Pet. at 14.) Petitioner enumerates two instances of allegedly improper vouching. The court addresses them separately.

The first incident allegedly occurred during voir dire. (Id. at 6.) Petitioner takes exception to the prosecutor inquiring as to a situation where "witnesses who have entered into . . . cooperation agreements . . . are willing to provide truthful testimony in exchange for leniency on a case that they may be involved with," and whether any of the prospective jurors "feels that a person in those shoes, under those circumstances, could not be telling the truth." (Trial Tr. 1026:4-13.) When a prospective juror suggested that a cooperating witness may not be telling the truth and that the jury must "make [its] own judgment whether that person is a credible witness or not," the prosecutor agreed, noting the prospective juror "summed it up accurately and succinctly." (Id. 1026:14-1027:4.) Vouching "refers to the prosecutor acting as an unsworn witness in order to tie his own credibility to that of the witness." McGhee v. Rock, No. 12-CV-4077 (ERK), 2014 WL 5800650, at *7 (E.D.N.Y. Nov. 7, 2014). The prosecutor in

this case merely inquired if the prospective jurors believed a cooperating witness could never be truthful, i.e., whether they are biased against cooperating witnesses.[8] There was no improper vouching here.

The second incident allegedly occurred during summation. (Mem. of Law in Supp. of Pet. for Writ of Error Coram Nobis ("Coram Nobis Mem.") (Dkt. 15-3 at ECF No. 950) at 7.) Again referencing cooperating witnesses, the prosecutor told the jury that, "the[ir] testimony proves out, I submit to you, to be truthful when taken against all other evidence." (Trial Tr. 1792:10-13.) Again, this is not improper vouching. The prosecution is permitted to argue that a witness testified truthfully if that speculation is based on the evidence adduced at trial, rather than on personal belief. McGhee, 2014 WL 5800650, at *7 (finding the prosecutor's use of words like "I submit" or "I suggest" in relation to the truthfulness of a witness's testimony is not vouching when based on evidence). Here, the prosecutor "submit[ted]" to the jury that the testimonies of the cooperating witnesses were truthful "when taken against all other evidence" (Trial Tr. 1792:10-13), and there is no indication that she tied her own credibility to that of the witnesses. Furthermore, such comments are particularly innocuous when they come in response to defense counsel's attack on the witnesses' credibility. See id at *7 (citing People v. Marks, 160 N.E.2d 26, 31 (N.Y. 1959)). Petitioner's trial counsel specifically argued in summation that the cooperating witnesses lied in order to benefit from their cooperating agreements with the District Attorney. (See, e.g., Trial Tr. 1731:8-10, 1748:15-16.) The prosecutor's comments during summation, when reviewed in context, are therefore permissible.

---

[8] While not directly at issue here, the court also notes that New York law affords each party "a fair opportunity to question the prospective jurors as to any unexplored matter affecting their qualifications." N.Y. Crim. Proc. Law § 270.15. Courts have broad discretion in deciding the scope of counsel's questioning of prospective jurors. People v. Steward, 950 N.E.2d 480, 484 (N.Y. 2011). Whether a juror can fairly evaluate a witness who has a cooperation agreement with the District Attorney undoubtedly concerns his or her qualifications in a trial where two of the primary witnesses are cooperators.

Because the prosecutor's statements were not improper vouching, any argument by appellate counsel alleging ineffective assistance of trial counsel on this basis would have been meritless and appellate counsel cannot be faulted for omitting it. See Aparicio v. Artuz, 269 F.3d 78, 88 (2d Cir. 2001) (finding appellate counsel was not ineffective for not raising a claim that trial counsel failed to pursue an objection that was meritless). Accordingly, Petitioner's claim fails.

### iv. Accessorial Liability Jury Charge

Petitioner also contends that his appellate attorney was ineffective because he should have argued that trial counsel was ineffective for failing to object when the trial court erred in its jury charge on accessorial liability. (Am. Pet. at 16.) The trial court instructed the jury that "[w]hen one person engages in conduct which constitutes an offense, another is criminally liable for such conduct when acting with the state of mind required for the commission of that offense, he solicits, requests, commands, importunes or intentionally aids such person to engage in such conduct." (Trial Tr. 1834:23-1835:3 (emphasis added).) Petitioner quibbles with the use of the term "state of mind" as opposed to "mental culpability." (DeVaughn Suppl. Coram Nobis Aff. ¶ 14 (citing People v. Vasquez, 478 N.Y.S.2d 947, 948 (App. Div. 1984)).) While it is true that some courts use the term "mental culpability" when referencing the mens rea element of accessorial liability, others use "state of mind." Compare, e.g., Vasquez, 478 N.Y.S.2d at 948 ("mental culpability"), with e.g., People v. Morales, 27 N.Y.S.3d 538, 539 (App. Div. 2016) ("state of mind"), CJI2d[NY] Accessorial Liability, http://www.nycourts.gov/judges/cji/1-General/CJI2d.Accessorial_Liability.Rev.pdf (same). The court sees no meaningful difference between the two. In its instructions to the jury, a trial court need only ensure that "the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision." People v. Drake, 850 N.E.2d 630, 633 (N.Y. 2006); see also

N.Y. Crim. Proc. Law § 300.10 (In charging a jury, the court must state "the fundamental legal principles applicable to criminal cases in general [and] the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts."). Whatever the precise language, the trial court correctly charged the jury as to the <u>mens rea</u> element of accessorial liability. Accordingly, the assertion that the trial court erred by using the term "state of mind" is meritless, and neither trial counsel nor appellate counsel can be faulted for not pursing this claim.[9]

v.    <u>Multiple Defendant Jury Charge</u>

Petitioner further asserts that appellate counsel was ineffective for not raising an ineffective assistance argument against trial counsel for not objecting to the trial court's failure to use a multiple defendant jury charge. (DeVaughn Suppl. <u>Coram Nobis</u> Aff. ¶¶ 11-12.) Petitioner relies on <u>Vasquez</u> and N.Y. Criminal Procedural Law § 300.10(4) for the proposition that the trial court should have "instruct[ed] the jury to consider the evidence of guilt or

---

[9] The Amended Petition only alleges that appellate counsel was ineffective for not arguing that "trial counsel was ineffective for failing to object to the trial [court's] refusal to apply the defense['s] jury charge." (Am. Pet. at 16.) All of Petitioner's ineffective assistance of appellate counsel claims derive from some form of ineffective assistance claim against trial counsel. (<u>Id.</u> at 10-23.) The court therefore does not construe the Amended Petition to raise the separate ineffective assistance of appellate counsel claim concerning the trial court's alleged error in refusing—over trial counsel's objection—to read the full pattern criminal jury instruction relating to corroboration of accomplice testimony. (<u>See</u> <u>Coram Nobis</u> Mem. at 8-12.)

Even if Petitioner did assert such a claim, it would be meritless. The crux of this argument is that the trial court should have further explained to the jury that accomplice testimony requires corroboration because the law views such testimony with suspicion, especially when the accomplice received some consideration for the testimony. (<u>Id.</u>; Trial Tr. 1859:18-1860:19.) However, as noted previously, a jury charge is adequate if, when taken as a whole, it properly instructs the jury as to the correct rules of law. <u>See</u> <u>Drake</u>, 850 N.E.2d at 633. Furthermore, "a charge may be sufficient, indeed substantially correct, even though it contains phrases which, isolated from the context, seem erroneous." <u>People v. Ladd</u>, 675 N.E.2d 1211, 1213 (N.Y. 1996). Here, although the trial court did not read wholesale the pattern instruction on corroboration of accomplice testimony, it did instruct the jury that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." (Trial Tr. 1837:11-14.) The court also explained that, in relation to cooperating witnesses, the jury may "consider whether a witness hopes for or expects to receive a benefit for testifying [and] whether and to what extent, if any, it affected the truthfulness of the witness's testimony" (<u>id.</u> 1841:18-22). The court thus alerted the jury to the possibility that an accomplice who has something to gain from testifying against Petitioner may have an incentive to lie in his or her testimony. Therefore, the jury charge, when taken as a whole, was not erroneous, and any ineffective assistance claim based on the assertion that it is erroneous fails.

innocence separately as to each defendant." (Id. ¶ 12.) His reliance on these authorities is misplaced. Vasquez held that in "trial[s] involving two defendants, it was incumbent upon the court to instruct the jury to consider the evidence of guilt or innocence separately as to each defendant." 478 N.Y.S.2d at 948 (emphasis added) (citing N.Y. Crim. Proc. Law § 300.10(4)). Section 300.10(4) similarly notes that the court must "instruct the jury to render a verdict . . . with respect to each defendant if there [is] more than one." N.Y. Crim. Proc. Law § 300.10(4) (emphasis added). In this case, Petitioner was the only defendant tried, and Vasquez and § 300.10(4) are inapplicable. Neither appellate nor trial counsel's decision not to take issue with the lack of a multi-defendant jury charge is a basis for an ineffective assistance claim.

### vi. Felony Murder Jury Charge

Petitioner's last enumerated ground for ineffective assistance of appellate counsel is that appellate counsel failed to argue on appeal that trial counsel was ineffective for not objecting to the erroneous felony murder instructions. (DeVaughn Suppl. Coram Nobis Aff. at 15-16.) In its charge explaining felony murder to the jurors, the trial court stated:

> Under our law, a person is guilty of Murder in the Second Degree, when, in the course of or in furtherance of the commission or attempted commission of a robbery, or in the immediate flight therefrom that, a person or another participant, if there be any, causes the death of a person other than one of the participants.

(Trial Tr. 1846:9-15 (emphasis added).) The statute, however, uses the conjunctive "and" rather than the disjunctive "or." N.Y. Penal Law § 125.25(3) (stating "in the course of and in furtherance of" (emphasis added)). The trial court thus erred by eliminating a necessary element of felony murder. See Langston v. Smith, 630 F.3d 310, 315 (2d Cir. 2011) ("[I]n the course of' and 'in furtherance of' must be construed as two distinct proof elements, each of which has independent meaning."). Petitioner's trial counsel did not object to the charge during trial and appeared not to have noticed the misstatement of law. However, it must be noted that the

validity of this charge is not at issue before the court. It is not enough to show that the charge was erroneous. Nor is it sufficient to establish that trial counsel was ineffective for failing to object to the charge. Rather, the pertinent question is whether Petitioner's appellate counsel was ineffective for choosing not to argue on appeal that trial counsel was ineffective on this basis.

Appellate counsel's decision not to argue ineffectiveness of trial counsel on direct appeal was plainly strategic, and the court cannot conclude that Petitioner has overcome the high bar imposed on challenges to such tactical choices. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Appellate counsel was aware of the mistaken jury charge and the potential claim of ineffective assistance of trial counsel on this ground. (See Nov. 25, 2009, Ltr. (DeVaughn Suppl. Coram Nobis Aff., Ex. D) (Dkt. 15-3 at ECF No. 929).) He specifically addressed this issue in a letter to Petitioner dated November 25, 2009. (Id.) He explained that it was best to forgo arguing that trial counsel was ineffective because normally, "an ineffective assistance of counsel claim is raised in a post-conviction proceeding [and] is not done in the appellate court." (Id.) "[I]t is [therefore] unlikely that the appellate court w[ould] resolve the merits of such a claim." (Id.) Furthermore, appellate counsel "believe[d] that raising the claim w[ould] hurt some of [the other] appellate arguments, e.g. [the argument that the trial court erred in admitting evidence of uncharged crimes] because we are claiming that [your] trial attorney raised a compelling argument to exclude [them]." (Id.) Appellate counsel therefore thought it best to "save" the ineffectiveness argument for a separate proceeding, and instead argued on appeal only that the erroneous jury charge amounted to a constitutional violation. (Id.; Appellant's Br. at 27-28.)

While the court has some doubts as to the prudence of this strategy, it is clear from appellate counsel's letter that his decision was "made after thorough investigation of law and facts relevant to plausible options." Strickland, 466 U.S. at 690. It was not objectively unreasonable for appellate counsel to conclude that the better course was to omit the ineffective assistance argument on the direct appeal given the evidence in the record linking Petitioner to the charged offenses and the potential deleterious effect on Petitioner's other appellate arguments. An appellate counsel's strategic choices are presumed reasonable, and are "virtually unchallengeable." Id.; see also id. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgement."). Admittedly, Petitioner's ineffective assistance argument on this basis is the strongest of all his asserted grounds. Nevertheless, the burden Petitioner must carry to succeed against the doubly deferential standard when Strickland and AEDPA work in tandem is heavy, and on these facts, the court concludes that Petitioner's claim fails. At minimum, fairminded jurists could conclude that such a decision did not fall below an objective standard of professional reasonableness.[10]

### vii.    Cumulative Effect of Appellate Counsel's Conduct

The court finally assesses whether the cumulative effect of errors allegedly made by Petitioner's appellate counsel justifies a finding of ineffective assistance of counsel. Eze v. Senkowski, 321 F.3d 110, 135-36 (2d Cir. 2003) ("assess[ing] the aggregate effect of these

---

[10] For completeness's sake, the court notes that Petitioner asserted a separate claim that appellate counsel was ineffective for his failure to argue that "trial counsel was ineffective for his failure to adequately prepare and investigate on [his] behalf." (Am. Pet. at 18-19.) Petitioner provides no further support for this claim. Having carefully reviewed the trial transcripts, the parties' submissions in this proceeding as well as in Petitioner's direct appeal and collateral applications, the court finds no colorable basis for this claim other than the grounds specifically asserted in his Amended Petition and error coram nobis application. Those issues have been separately addressed supra.

alleged errors to determine whether their cumulative weight rises to the level of constitutionally deficient conduct"). The court concludes that it does not, and that appellate counsel provided meaningful representation. On appeal, appellate counsel stressed the three main points that he deemed most persuasive and had the highest likelihood of success. (See Appellant's Br. at 1.) Petitioner's ineffectiveness claims all flow from arguments that appellate counsel chose not to pursue. As explained in greater detail previously, most of these arguments are weak or meritless—indeed, only one of the bases Petitioner asserted gave the court pause (see supra III.E.3.b.vi), and the decision to omit it was a legitimate strategic choice. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." See Jones, 463 U.S. at 751-52. The strategic decisions of Petitioner's appellate counsel must be afforded the same deference that the Supreme Court has repeatedly mandated is due. Although appellate counsel failed to obtain the relief Petitioner desired and we can never be certain whether a different outcome would have resulted from alternative arguments, the court is mindful that "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. As such, the Appellate Division did not unreasonably apply any federal law when it denied Petitioner's ineffective assistance of appellate counsel claim.

*   *   *

Having considered each ground of Petitioner's ineffective assistance of appellate counsel claim individually and cumulatively, the court concludes that habeas relief is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Amended Petition is DENIED. Because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability

shall issue.  The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this judgment would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully DIRECTED to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      January _18_, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge